UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No: 5:19-cr-000182- |
| Plaintiff, ) | GFVT-MAS |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| DARRYL W. STEWART JR., ) | **&** |
| ) | **ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Magistrate Judge Matthew A. Stinnett's Report and Recommended Disposition [R. 55] of the Motion to Suppress Evidence [R. 44] filed by Darryl W. Stewart.  The Government opposed Mr. Stewart's Motion to Suppress [R. 49.]  Magistrate Judge Stinnett conducted an evidentiary hearing on the issues raised in Mr. Stewart's Motion to Suppress and the Government's Motion in Opposition, and, thereafter, issued a written recommendation wherein he recommends that Mr. Stewart's Motion be denied.  [R. 51; R. 55.] For the reasons that follow, this recommendation will be adopted.

**I**

Magistrate Judge Stinnett outlined the facts in his recommendation [R. 55.]  Mr. Stewart is charged with being a felon in possession of a firearm. [R. 1.]  On September 3, 2019, the Lexington Police Department began to search for Tavis Chenault, Stewart's co-defendant, to "detain him pursuant to an arrest warrant." [R. 55 at 1.]  While monitoring Chenault's apartment, law enforcement observed a 2007 black Lexus enter Chenault's apartment complex, briefly stop in front of Chenault's building, and proceed to exit the complex. [R. 55 at 2.]  No

person entered or exited the vehicle. *Id.* Detectives Robert Terry and Zakary Ridner followed the vehicle to a nearby Speedway and, around 10:27 p.m., parked behind the vehicle. *Id.* After Terry parked behind the vehicle, Stewart quickly exited the vehicle and entered the Speedway. *Id.* As the passenger of the vehicle followed behind, he was identified by the detectives as Chenault and was promptly arrested and searched. *Id.* Approximately $1,600 in cash and four cell phones were found on his person. *Id.* At this point, approximately 10:31 p.m., a canine unit was called to the scene. *Id.* While Chenault was being apprehended, Stewart approached the officers and asked if he could retrieve his phone; his request was denied. [R. 58 at 2.] At this point, Stewart began "physically distancing himself from the Lexus and the arrest" and began to "borrow other Speedway patrons' phones to secure a ride away from the Speedway." [R. 55 at 2.] Detective Steven Hudak, just arriving on the scene, was informed of Stewart's behavior. *Id.* Hudak approached Stewart and requested identification; Stewart complied. *Id.*

    Once Stewart's license information had been processed, Hudak asked Stewart to move closer towards the Lexus and informed him that he was being detained. *Id.* at 3. Soon afterward, Detective Terry alerted that he had seen a firearm in the driver's side floorboard of the Lexus. *Id.* Stewart was then taken to the pavement, handcuffed, led toward the police cruiser, and searched. *Id.* Around 10:39 p.m., Ness, a narcotics-trained canine, and her handler, Officer Timothy Dawson, arrived. *Id.* at 3-4. Dawson "led Ness around the perimeter of the Lexus," where the dog gave a positive response alert to the presence of the odor of narcotics at the passenger side of the vehicle. *Id.* at 4. Detectives then immediately searched the vehicle and discovered multiple firearms, including the firearm that Detective Terry had seen in the driver's side floorboard. *Id.* Later, once Stewart's background check was received, LPD learned that Stewart had a prior felony conviction and was thus prohibited from possessing a firearm. *Id.*

Although Stewart does not object to the facts listed above, he does object to Magistrate Judge Stinnett's legal conclusions regarding the moment that his detention began and whether the officers had reasonable suspicion to detain him. [R. 58 at 3.] Magistrate Judge Stinnett's recommendation indicates that Stewart's detention began when Officer Hudak expressly informed Stewart that he was being detained; this moment occurred after Chenault had been arrested and after Stewart had consensually provided identification to Officer Hudak. [R. 58 at 3.] In opposition, Stewart asserts that his detention began immediately upon Detective Terry parking behind his Lexus and that, because reasonable suspicion had not arisen yet at the time the Lexus was blocked in, all fruits thereof must be suppressed. *Id.* Stewart's objection triggers this Court's obligation to conduct a *de novo* review of the Motion to Suppress. 28 U.S.C. § 636(b)(1)(c). Having satisfied this duty, and for the reasons provided below, the Magistrate Judge's recommended disposition will be **ADOPTED** for the reasons stated herein, Mr. Stewart's objections [R. 58] will be **OVERRULED** and Mr. Stewart's Motion to Suppress [R. 44] will be **DENIED**.

## II

In Mr. Stewart's Motion to Suppress, he first argues that the Lexington Police Department did not possess reasonable suspicion to seize him at the moment seizure began. [R. 44 at 4.] Stewart argues that seizure began when Detective Terry parked his cruiser behind his Lexus, preventing him from leaving the Speedway. *Id.* at 5. Second, Stewart argues that the Lexington Police Department did not have probable cause to search his car. *Id.* at 6. He argues that, while Detective Terry "claimed he saw a handgun on the floorboard in plain view," the Lexus had black tinted windows, no other officer spotted the gun despite peering into the Lexus with flashlights, and the BWC footage does not show the handgun in plain view. *Id.* at 7. Stewart thus argues that probable cause could not have been based on the sighting of the gun.

*Id.* Additionally, Stewart argues "the dog sniff appears to be questionable as to a positive test alert" because no illegal drugs were ultimately found in the car, and, therefore, probable cause should not have been based on the dog sniff either. *Id.* Judge Stinnett thoughtfully considered each of these issues and determined that Mr. Stewart's Motion should be denied.

**A**

First, Magistrate Judge Stinnett addressed Mr. Stewart's argument that the LPD did not possess reasonable suspicion required to detain him. [R. 44 at 4.] In order to address this argument thoroughly, Judge Stinnett split his analysis into two parts by first addressing the moment in which Mr. Stewart's seizure began and by secondly addressing the reasonableness of the investigatory stop itself. [R. 55 at 5,8.] First addressing the timing of the seizure, a seizure begins when "a reasonable person would have believed that he was not free to leave." *United States v.* Smith, 594 F.3d 530, 536 (6th Cir. 2010). Stewart argues that his seizure began when Detective Terry blocked in his Lexus, preventing him from leaving the scene. [R. 44 at 5.] Judge Stinnett concluded that seizure did not begin at this moment, and, instead, began when Stewart was expressly told he was being detained and could not leave. [*Id.* at 5-7.]

In coming to this conclusion, Judge Stinnett analyzed several facts. First, after Stewart's car was blocked, he still exited his car, entered the Speedway, and began using a phone to secure a ride away from the scene. [R. 55 at 6.] Officer Hudak then approached Stewart and "calmly requested" his identification. *Id.* The Sixth Circuit has ruled that "no seizure has occurred when police ask questions of an individual, [and] ask to examine the individual's identification, . . . so long as the officer do not convey a message that compliance with their requests is required." *United States v. Campbell,* 486 F.3dd 949, 954 (6th Cir. 2007); *cf. United States v. Ward*, 756 F. App'x 560, 565 (6th Cir. 2018) (noting that "an officer's threatening tone

4

can change a consensual interaction into a seizure"). Here, Stewart provided his identification and continued to use a phone to secure a ride. *Id.* Neither officer had a gun drawn at this point, nor did either officer demand compliance or request Stewart to accompany them to a different location. *Id.* At this point, no fact indicates that Stewart believed himself unable to leave the scene. Additionally, once Stewart was informed that he was being detained, he expressed surprise. *Id.* at 7. Stewart's surprise indicates that he did not reasonably believe that he had been detained before this specific moment. For these reasons, Judge Stinnett concluded that Mr. Stewart had not been seized until the moment Officer Hudak expressly informed him that he was being detained.

      Mr. Stewart filed a timely objection to this portion of the Recommended Disposition. In his objection, Stewart argues that he was detained from the moment his car was blocked in its parking space because he could not leave the scene when he wished and that, because reasonable suspicion did not exist when his car was blocked, his seizure was unlawful. [R. 58 at 3.] As further evidence of his reasonable belief of seizure, Stewart points to the facts that he was denied permission to retrieve his cell phone from his vehicle and that multiple additional officers arrived on the scene soon after his car was blocked in. *Id.* at 4.

      Although Mr. Stewart's argument is persuasive, it must fail because Stewart did not submit to a show of authority until his detention was expressly demanded by Officer Hudak. Until that moment, Stewart had not submitted to authority and had, instead, only acted consensually. In *United States v. Jones*, the Sixth Circuit ruled that seizure does not occur until a suspect submits to an act of authority. 562 F.3d 768, 75-6 (6th Cir. 2009). In *Jones*, officers initiated seizure by hemming in a Nissan. *Id.* at 774. However, the suspect opened the car door and "'jumped out as though he wanted to run.'" *Id.* Only after the suspect jumped out of the

car did officers observe a bulge on his person and strange behavior giving rise to reasonable suspicion. *Id.* Although the initial hemming in of the suspect's car might have failed constitutional scrutiny due to a lack of reasonable suspicion, the Circuit ruled that the stop was "at most an attempted seizure." *Id.* (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007).

Here, like in *Jones*, Mr. Stewart was likely subjected to an attempted seizure when his car was blocked in. However, because Stewart exited his vehicle, entered Speedway, and began calling around to secure a ride from the scene, he did not acquiesce to LPD's authority. Between the moment Stewart's car was blocked in and Officer Hudak expressly detained him, Stewart was acting consensually. [R. 55 at 6.] During this time period, LPD observed Stewart attempt to distance himself from the scene and act oddly. *Id.* Moreover, LPD requested Stewart's identification, which he provided freely. *Id.* at 3. Thus, because Mr. Stewart did not acquiesce to authority until well after his car was blocked in, this Court accepts Judge Stinnett's recommendation that Mr. Stewart was not detained until Officer Hudak expressly informed him of his detention.

**B**

After determining when seizure began, Judge Stinnett next turned to whether the investigatory stop of Mr. Stewart was reasonable. Mr. Stewart asserts that his detention was not based on reasonable suspicion. The Sixth Circuit has held that "an officer may conduct an investigatory stop only if he 'has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010) (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)). The investigatory stop inquiry requires "a two-part analysis of the reasonableness of the stop." *United States v. Smith*, 594 F.3d 530, 536 (6th Cir. 2010). A court must "first ask whether there was a proper basis for

the stop and, if the stop was proper, then . . . determine whether the degree of intrusion . . . was reasonably related in scope to the situation at hand." *Id.* (internal quotation marks omitted). The reasonable suspicion determination requires "a totality of the circumstances" approach, "and a reviewing court view[s] the evidence offered in support of reasonable suspicion using a common sense approach, as understood by those in the field of law enforcement." *United States v. Collazo*, 818 F.3d 247. 257 (6th Cir. 2016) (quoting *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004)).

### 1

While analyzing whether a proper basis existed for the stop, Judge Stinnett pointed to several factors including:

> (1) The fact that Stewart had been driving the arrested Chenault, whom the officers believed to be involved in narcotics trafficking; (2) the fact that the officers observed Stewart seeking to physically distance himself from the Lexus; and (3) the related fact that Stewart was asking others in the parking lot to borrow a phone, evidently seeking to get a ride away from the Speedway." [R. 55 at 8-9.]

Although in agreement with Stewart that his mere presence with Chenault did not give rise to reasonable suspicion, Judge Stinnett found that Stewart was also observed acting "notably odd" by Officer Hudak and had a "clear desire to flee the scene". [R. 55 at 9.] The Sixth Circuit has indicated that a desire to distance oneself from a scene of investigation can be a factor in the reasonable suspicion analysis. *See United States v. Logan*, 526 F. App'x 498, 503-04 (6th Cir. 2013) (ruling that the defendant's attempts to "distance himself from the passenger's seat of the vehicle" factored into the reasonable suspicion analysis); *United States v. Smith*, No. 3:09-CR-147, 2010 WL 1543851, at *3 (E.D. Tenn. Apr. 16, 2010) (defendant's "attempt[] to leave the scene of the investigation" upon authorities' arrival contributed to officers' reasonable suspicion that he was involved in criminal activity."). Magistrate Judge Stinnett found that Mr. Stewart's

actions to distance himself were more than just "casual nervousness," but were "concerted, discernable efforts to physically separate himself from the Lexus, even approaching strangers to borrow a phone and request a ride." [R. 55 at 10.] Ultimately, Judge Stinnett concluded that

> The reasonable, commonsense inference is that Stewart wanted to disassociate himself from the Lexus and Chenault so that officers would not discover that Stewart, too, was engaged in criminal activity. Hudak, like any reasonable officer, rightfully perceived these facts and had objective and particularized grounds for detaining Stewart, clearing the reasonable suspicion bar for detention. [R. 55 at 11.]

Thus, because of these noted behaviors, the totality of the circumstances gave rise to reasonable suspicion for the stop. *See United States v. Coker*, 648 F. App'x 541, 544 (6th Cir. 2016) (ruling that "[r]easonable suspicion is not a high bar" and "the officer needs only a minimal level of objective justification") (internal quotation marks omitted).

Stewart also objects to Judge Stinnett's conclusion that Officer Hudak possessed reasonable suspicion required to detain him. Stewart cites to multiple cases discussing the requirement for an officer to have a "particularized and objective basis for suspecting the particular person stopped of criminal activity" and that this basis be "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Baldwin*, 114 F. App'x 675, 679 (6th Cir. 2004) (quoting *United States v. Cortez*, 449 U.S. 411 (1981)); *United States v. Sokolow*, 490 U.S. 1 (1989). However, the United States has indicated several factors, beyond just an inchoate hunch, which gave rise to reasonable suspicion here. [R. 55 at 8-9]. These factors include Stewart's odd behavior, his clear desire to distance himself from the scene of investigation, and his proximity to Mr. Chenault. *Id.* Together, these observations gave rise to the reasonable suspicion required to conduct Stewart's detention. Because reasonable suspicion

8

existed at the time Stewart's detention began, this Court adopts Judge Stinnett's recommendation that a proper basis existed for detention.

2

Having determined that a proper basis existed for Stewart's detention, Magistrate Judge Stinnett next turned to whether the scope and duration of the detention was reasonable. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005) (internal quotation marks omitted). Here, the record indicates that a canine unit was called to the scene "within roughly ten minutes of Chenault's arrest", which was prior to Stewart's detention. [R. 55 at 12.] After Stewart was detained, pending the results of his identification inquiry, the dog sniff occurred; this sniff "amounted to a quick and minimally intrusive investigative tactic calculated to quickly confirm or deny the officers' suspicion that Stewart and the Lexus were linked to drug activity." *See United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (finding no unreasonable detention where officers spent "approximately 35 minutes . . . waiting for a canine unit to arrive[,]" and "the entire investigation thus lasted for less than one hour.").

Although Stewart perfunctorily challenged the extent of the stop at the evidentiary hearing conducted by Magistrate Judge Stinnett, he has since failed to provide facts that indicate that the scope of the stop and canine sniff, (which lasted approximately ten minutes from the initiation of detention), exceeded the scope or duration required under the circumstances of this case. Additionally, Stewart did not object to the Recommended Disposition regarding the scope and duration of his detention. When no objections are made this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a *de novo* or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 151 (1985). Nevertheless, this Court has examined the record and

9

agrees with the Recommended Disposition that the scope and duration of LPD's search did not violate Stewart's Fourth Amendment guarantee from unreasonable searches and seizures.

### C

Judge Stinnett next examined whether probable cause existed to search Stewart's Lexus. In his Motion to Suppress, Stewart argues that, for the automobile exception to the warrant requirement to be applicable, law enforcement must have probable cause to believe the vehicle contains evidence of a crime. [R. 44 at 6]. Stewart states that LPD did not have probable cause to believe his Lexus contained evidence of a crime for two primary reasons. First, Stewart argues that Detective Terry's sighting of a handgun in plain view is unreliable because no other officer spotted the gun after shining flashlights in the car, the Lexus had tinted windows, and the gun is not visible in photos of the car captured on the scene. *Id.* at 7. Additionally, Stewart argues that probable cause did not exist both because LPD did not claim to have smelled any odor of narcotics while arresting Mr. Chenault and because the canine dog "does not appear to be sniffing or zeroing in on a particular part or location of the car. Rather, the dog appears to follow the movements of his handler and then sit excitedly perhaps in expectation of a treat." *Id.* at 3. Judge Stinnett concluded the following:

> In conjunction with the other facts known the officers (including Chenault's presence in the car, Chenault's outstanding arrest warrant, officers' awareness that Chenault had been involved in drug trafficking, the cell phones and cash found on Chenault upon arrest, and Stewart's obvious effort to distance himself from the vehicle), [the canine's] final positive response established probable cause for the vehicle search. [R. 55 at 14.]

*See United States v. Patton*, 517 F. App'x 400, 402 (6th Cir. 2013)(citing *United States v. Diaz*, 25 F.3d 392, 393-94 (6th Cir. 1994)) ("[A]n alert by a properly trained narcotics dog while sniffing a vehicle is sufficient to establish probable cause for a search of the vehicle.").

10

Stewart did not object to the Recommended Disposition regarding whether probable cause existed to search his vehicle. When no objections are made this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a *de novo* or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 151 (1985). Nevertheless, this Court has examined the record and agrees with the Recommended Disposition that probable cause existed giving rise to a proper search of Stewart's vehicle under the automobile exception to the warrant requirement.

### D

Finally, Judge Stinnett analyzed the applicability of the inevitable discovery exception to the exclusionary rule to the facts of this case. "The inevitable discovery doctrine allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably would have been acquired through lawful means." *United States v. Mohammed*, 512 F. App'x 583, 587 (6th Cir. 2013). Judge Stinnett found that, "even if the sniff-based search and foundational investigatory stop were constitutionally defective, the inevitable discovery exception to the exclusionary rule would preclude suppression of the found firearms in the scenario." [R. 55 at 15.] The evidence of firearms in Mr. Stewart's car would have inevitably been found, even without probable cause when the search occurred, because, prior to his detention and the search of his car, Stewart voluntarily provided his identification to Officer Hudak. [R. 55 at 2.] By voluntarily providing his identification, law enforcement would have eventually learned that Mr. Stewart was prohibited from possessing a firearm. With this knowledge and the sighting of a firearm in the driver's side floorboard, Stewart "was always going to face the current charge even absent his detention or canine alert." (*See* [R. 55 at 15.] citing *United States v. Matthews*, 422 F. Supp. 3d 1235, 1255 (W.D. Ky. 2019).

Mr. Stewart did not object to the Recommended Disposition regarding whether the inevitable discovery doctrine would have led to the discovery of his felon status and unlawful possession of a weapon. When no objections are made this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a *de novo* or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 151 (1985). Nevertheless, this Court has examined the record and agrees with the Recommended Disposition that the inevitable discovery exception to the exclusionary rule would permit entry of evidence of Mr. Stewart's possession of a firearm even if probable cause was not properly in existence at the time of the search of his vehicle.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Darryl Stewart's Objections to the Magistrate Judge's Report and Recommendation [**R. 58**] are **OVERRULED**;

2. The Magistrate Judge's Recommended Disposition [**R. 55**] is **ADOPTED** as and for the opinion of this Court;

3. Defendant Darryl Stewart's Motion to Suppress Evidence [**R. 44**] is **DENIED**.

This the 2d day of October, 2020.



Gregory F. Van Tatenhove
United States District Judge